Good morning, Your Honor. Scott Hubbard on behalf of the plaintiff. With me is Trial Counsel, Attorney Lynn Hubbard, my father. My father has asked for the opportunity to address this court for 109 seconds, which is fortunate for me because I just would like to address some housekeeping issues and I'm going to reserve the rest of my time. All right. Well, you can share your time any way that you want. I mean, your father's a lawyer also, but you only get 15 minutes for rebuttal and however you want to use your time, so I'll leave that to you. Of course, Your Honor. First, with respect to the 28J letter that we submitted, the second issue addressed on that, on the second page, stated that whether or not an ordinance was enacted is a question of fact not addressed by the court. I actually had a chance to research the issue and the San Diego County has adopted the state supplement pursuant to section 72.402. So, unless the panel has anything to say. I do have a quick question. No one's raised this, but in light of the Ninth Circuit's recent en banc decision in Chapman v. Pier 1, on what basis does Mr. Oliver have standing to bring this claim? What injury, in fact, did he suffer? Fair enough, Your Honor. I mean, even though no one's saying this, you still have to establish jurisdiction. Correct. And as evinced by our 28J letter, we wanted to remand, to include that, those allegations in the complaint so it's specifically set forth. Obviously, this lawsuit was handed down before the Ninth Circuit's decision in Chapman. And so, when it came down, we immediately went through all of our lawsuits, a large number to be sure, and immediately started asking courts, trial courts, for permission to amend the complaint. Obviously, there's no such procedure in this court. So, there isn't jurisdiction is what you're saying? There is jurisdiction. One moment, Your Honor. My father is more familiar with the underlying facts of this case than I am. So, rather than waste the court's time addressing this issue. All right. You can call a lifeline here, but probably call him by his name, not your dad. Fair enough, Lynn Hubbard. Okay. I would simply point out that this case. Because I'd like to call my mom right now, but she won't answer. You sure? I don't think for court. The excerpts of Record 3 and 4 list the barriers that he personally encountered, or I believe that he encountered. It didn't say that he personally encountered them. I mean, I was troubled by this Chapman complaint and how similar it was to the one that was filed in this case as well. So, it says, to the extent known by Oliver, the barriers at the food for less included, but are not limited to the following. So, he doesn't say he encountered them. Fair enough. He just says, these are the ones he knows about, which was very similar to what was said in Chapman. Knowledge, Chapman, Chapman, excuse me, I've got that cold that's been going around. Chapman's distinguishable because unlike the instant case Chapman, we simply attached a copy of our preliminary site report, which just simply listed the barriers to the complaint and had a general allegation that here's a list of barriers to the complaint. Now, Chapman said, and rightly so, that under the Supreme Court's recent decision, and I still don't know how to pronounce it, Ekbal. Ekbal. Ekbal. Thank you. Ekbal. That was insufficient. So, our new complaints specify how each of the barriers that he knows about or has actually encountered, A, whether or not he knows about them or has actually encountered them, and B, how they relate to his disability. So, this one doesn't, however. So, in the complaint for this case, it just says he visited the store and encountered barriers that interfered with his ability to use and enjoy the services at the facility. And then it says, to the extent known by him, it has a list. So, I didn't see what was requested in Chapman, which says there has to be some link between the barriers and his disability. And he has to explain, I'm in a wheelchair, I reached the curb, and I couldn't access. And there wasn't anything that seemed to get past that requirement in Chapman. Correct, Your Honor. If you look at the date that this complaint was filed, it was December 7, 2007, two years before Ekbal was handed down and four years before Chapman. If we had known that the Supreme Court and Ninth Circuit and bank panel was going to add these rules, obviously we would have done that. Right, but here we are today trying to figure out if we have jurisdiction. Fair enough. And, you know, you said in your 28-J letter that, well, you should have an opportunity to amend your complaint. Explain to me how that would even work procedurally, given that we're now here, I guess, after summary judgment. Normally, and this Ninth Circuit case escapes me as I'm standing right here. Under rule, if there's a choice between dismissal under Rule 12b-1 or an amendment to the complaint that can cure the deficient jurisdictional allegations, my understanding was the Ninth Circuit, rather than dismiss under Rule 12b-1 and have the whole thing start all over again, has been inclined to allow an amendment to address the deficient jurisdictional allegations and allow everything to go forward. So that would be something that we might tell the district court, but have you seen that occur when you're past summary judgment, now you're on appeal? Is there a case that would help us for the current procedural posture? My memory is that this came up to, this particular case came up to the court on the appellate level. And so the court allowed the amendment. But standing right here, regrettably, I can't tell you the case name. I could do a 28-J letter. Now, as for the barriers that the specific factual detail that this court is inquiring about, I'm going to have my father, Lynn Hubbard, step up. And as the trial counsel, he's infinitely familiar with the facts of this case. Thank you, Your Honor. Thank you. Did you want to reserve any time for rebuttal? If the court has questions for me after this, yes, but, or after the appellee's appeal, but I'm a servant of the court. So my job is to answer any questions the court has. All right. Thank you. Well, simply put. Good morning. Good morning, Judge. Can you state your name for the record, please? Lynn Hubbard. Thank you. My son's the writer. I'm just the old trial lawyer. But my function in these cases is to meet with the plaintiff, to make sure the barriers exist, and to make sure we don't sue any mom-and-pops. The problem that we developed in this case was defense counsel, especially for the outside, tried to remedy it, and they did it all wrong. Well, okay, but here, I mean, the issue as it was down in the trial court on the summary judgment, it appears to me that generally summary judgment is a challenge to the four corners of the complaint. And what you were given a date to amend a complaint didn't do it by that particular date. And then your contention was that because in an expert's declaration there were some barriers that would in fact be and that could in fact allege a cause of action, that that should therefore defeat summary judgment. Correct? Do I have your argument, basically? Basically, that's correct. So, you know, number one, there's a violation of the district court's scheduling orders and not complying with the dates. But also, when we're looking at, you know, when you're looking at 8A and looking at pleading requirements, right, that a person has a right to have notice of what is going on. And in 8A cases, if you give them notice and they fix it, then that takes care of it, right? That's correct. So, arguably, then there could be a reason that you wouldn't want to put something in the complaint because they might want to fix it and then that would defeat that particular cause of action. And so a summary judgment puts them on notice of what they have to, you know, what they're being sued for. They responded to that, but now you want to take something that's in discovery and somehow then import it into the complaint without going through the formal proceedings. And it seems like it turns everything on its head. Especially when they go out to fix it, when we give them the list that was rather lengthy, they go out and fix it and they do it wrong. So there we sit. They said, oh, well, we fixed it. You didn't follow the law when you fixed it. No, but what you're asking us to say is that defendants are put on notice that defendants are put on notice because somewhere in discovery there is something that could potentially allege a cause of action. And, you know, I mean, sort of classic summary judgment 101 is you respond to the four corners of the plating and that's what before the court. And if you don't have everything in your plating and you could otherwise allege something broader to defeat summary judgment, you ask to amend the complaint. That didn't happen here, so. Fair enough. Scott Hubbard again because I believe I can answer this question better than my father. In Chapman v. Pier 1, this very issue came up regarding the nature of the claim that's presented under Title III. Now, if you were to view the. . . That was a standing case, though. That was something that was very confusing to me because you seem to be relying on cases regarding standing as opposed to what has to be put into the complaint under Rule 8. So Chapman didn't address the Rule 8 issue, did it? I'm sorry, what was that second part of the question? Forgive me, Your Honor. I'm just trying to make the differentiation between standing cases such as Chapman, Doran, and those, and cases that address what has to be in the complaint in order to give notice to the defendant. Fair enough, Your Honor. The standing cases, I don't think they're mutually exclusive in this case or with Judge Callahan's question regarding the scope of the claim, and this is why Congress created ADA Section 308A. That was the part and parcel of a plaintiff's ability to bring a claim. Now, while the Chapman court focused on standing, as in what barriers can you remove, to address that issue it also had to address the issue of what is a Title III claim. Now, Title III barrier removal deals in issues of facilities, not barriers. When an individual brings a Title III claim to remove barriers, they're bringing a Title III claim, they're seeking injunctive relief to remove barriers from a facility. Now, this is why it does not matter whether or not you list all of the barriers in the complaint. It's not a question of inaccessible barriers. It's a question of inaccessible facilities. So Chapman is talking about the injury in fact requirement for Article III, and your suggestion is that we should extend that and apply the same injury in fact analysis to what needs to be stated for Rule 8 purposes. Do I have your argument right on that? My argument is that as set forth in Doran and as set forth in Scaff, when a disabled individual alleges facts stating that they encountered an inaccessible element at a facility, their Title III claim is not the inaccessible element. It's the inaccessible facility, and that's why standing extends to remove barriers from the entire facility, both known, unknown, unencountered, and encountered. So to focus solely on the barriers encountered and to limit injunctive relief to the barriers identified in the complaint, which FYI was the same argument that Pier 1 made in Chapman, you misconstrue, or I can't say that, it does not accurately reflect the full scope of injunctive relief, the full scope of the claim under Title III. If you look to the injunctive relief section for barrier removals, ADA Section 308A2, which we identify in the complaint, it talks about making facilities readily accessible and usable by the disabled. But now, you know, why should we condone behavior where you know about some barriers and you choose not to amend the complaint? Why should we, you know, why should we condone that sort of gangsmanship? Well, first, there's no... You know, that's how lawsuits are, you know, we just, you know, let's just get them done. Agreed. It's not, and the courts aren't going to play games with people and hide the ball and do all of that. Let's just, you know, put it out there and get them done. Because viewing it in such a way puts, conflicts with SCAP, conflicts with Doran, it puts too much emphasis on the notice provided by the complaint. How can you ever have too much notice? Well, I think that... I mean, that's, you know... Too much notice is a heightened pleading standard under Rule 9A. If I could certainly understand too little notice, but giving so much, too much notice, that's to quote SCAP, that's why federal rules of discovery were created. So that defendants, you plead the facts that prove that you have a right to be in that court, that you encountered barrier. Discovery is supposed to be where you flesh out... But you didn't have enough facts of what you had, and so you had to go into something else. So why weren't those in the complaint? I'm sorry, I didn't understand the court's... Well, the complaint that you had before the court that you chose not to amend was deficient. It didn't state a cause of action. Well, actually, that was never arrived at by the court. It was never a question of whether or not it stated a cause of action. It says stop, Your Honor. I would be willing to continue... You can answer the question. Fair enough. It wasn't that we never stated a cause of action. The court never held that we never stated a cause of action. The court wasn't going to let us amend the complaint to include barriers identified in our expert report. Now, those barriers identified in our expert report were still a part of a single claim, a single request to remove barriers under Title III of the ADA, a single cause of action. Okay. I think we understand your argument, then. Thank you. Your time has... You are in overtime. Thank you. May it please the Court. Good morning. I'm Greg Hurley for Apelli Ralph's Grocery Store. I'm joined today by my co-defendant, Cypress Creek, and we'd like to split our time so that they have seven minutes if that's acceptable to the Court. I was going to reiterate how we got here, the path we got here, because I think it's important to the Court's questions about the sequence and whether or not the plaintiff complied. Well, do we have jurisdiction? Do you have jurisdiction? Mm-hmm. Have they shown standing? Do they have standing? I was going to let my co-counsel respond to the standing arguments. I assume you mean under the Chapman case. Yeah. I was going to respond, if it's acceptable to the Court, to the pleading issues. All right. Go ahead. And I did want to respond to the question, the argument that was just raised, and I don't believe it's in the plaintiff's papers, which is the plaintiff does not need to identify barriers. The problem with that is that what do we do? All you get under the ADA is injunctive relief. The Court should restate injunctive relief with specificity under Rule 65. The defendants should know what they need to do to comply with the Court's order, and it should be obvious. What does the Court do? What do the defendants do if the plaintiffs don't give the defendants, don't give the Court the specificity necessary to craft that injunctive relief? That argument is also contrary to what I heard the plaintiffs say, which was they're going through all of their ADA actions and amending the complaints to list all of the barriers. That seems inconsistent with the position that they're arguing now, which is they don't need to identify those barriers. Well, does Rule 8 require that the plaintiff list every barrier? I believe it does, Your Honor, because Rule 8 combined with the environment of injunctive relief needing to be stated with specificity, ultimately the Court needs to have that information. And what better time than the pleading stage? Now, opposing counsel says, well, in Article 3, standing for that analysis in Chapman, Duran, and the like, we say, well, if there are barriers that prevent you from entering the facility, then you have standing to allege injuries for all the rest of the barriers as well. And they want us to import that into the Rule 8 analysis. Why shouldn't we do that? Well, the Court astutely noted that the Chapman case is about standing, whereas the facts that are here are about notice and pleading requirements. The section of Chapman that I believe is applicable here, and counsel will address the standing issues, is the footnote number 10 in Chapman, where what was issued was the plaintiff's expert report. And what the Court said is the card report, which was Chapman's expert report, does not supply the injury in fact element, even if it had been properly filed as part of an amended complaint. So I think the part of Chapman that applies to the issues that are in this case is the statement here that you do need to properly file this expert report that claims in this expert report as an amended complaint to meet the requirements of Rule 8. How did we get here? Briefly, a plaintiff filed this action in 2007. The complaint alleged 18 architectural barriers exist at the Ralph's store, my client's store, as well as the adjoining parking lot. In January 31, 2008, plaintiff's counsel conducted a site inspection to identify barriers. On March 6, 2008, the District Court held an early neutral evaluation conference. At that conference, plaintiff's counsel indicated that he intended to amend the complaint to allege additional barriers. On April 1, 2008, the District Court held a settlement conference. Plaintiff's counsel again indicated that he had again visited the Ralph's store just prior to the conference and wanted to amend the complaint to assert additional barriers. The District Court responded that plaintiff's counsel needed to allege new barriers via an amended complaint and would need to present a formal motion to amend. On May 14, 2008, the District Court held a case management conference. The judge consulted the parties regarding the proposed discovery and motion cutoff dates. Plaintiff's counsel again indicated his intent to amend the complaint to allege additional barriers. Then all parties, including plaintiff's counsel, agreed to June 13, 2008 as the last day to amend the pleadings. The District Court issued a scheduling order which specifically required that any motion to join other parties or amend the pleadings be filed on or before June 13, and that those dates and times will not be modified except for good cause. On June 30, 2008, after the amendment deadline and approximately three months after the District Court told plaintiff's counsel that he would need to seek leave of court, plaintiff finally filed an untimely motion to modify the scheduling order and to amend his complaint to allege additional barriers. The amended complaint alleged numerous new barriers and removed others. Plaintiff admitted in his moving papers that he could have amended the complaint by the deadline and that he had no justification for this conduct. Plaintiff also conceded that because the amendment deadline had passed, he needed to show good cause. Plaintiff conceded that the controlling Ninth Circuit authority required him to identify new barriers in an amended complaint in order to give defendants, quote, fair and adequate notice under federal rule of civil procedure 8. That's a cite to the record 139-140. The District Court heard the party's motions. The District Court found that the counsel manifested utter lack of diligence, which precluded a finding of good cause, plaintiff's counsel. On November 8, 2008, plaintiff filed his expert report. Plaintiff again changed his barrier allegations. He alleged new barriers neither identified in his original complaint nor in the proposed amended complaint. On January 2009, the parties filed cross motions for summary judgment. In his motion, plaintiff asserted unfled barriers in violation of the District Court's order denying his motion to allege new barriers in an amended complaint. In its motion, Ralphs addressed each of the alleged barriers identified by the plaintiff, whether identified in the original complaint, the proposed amended complaint, or the expert report and showed that all of them were in compliance. Ralphs asked the District Court to dismiss plaintiff's ADA claims as moot and to decline supplemental jurisdiction over plaintiff's state law claims. On August 26, 2009, the District Court issued its decision in favor of defendants. The District Court found that plaintiff's ADA claims were without merit or moot. The judge also found three independent grounds for not exercising supplemental jurisdiction. One, that plaintiff's only federal claim had been dismissed. Two, plaintiff's state law claims raised complex and novel issues of state law. And three, plaintiff's state law claims substantially predominated over his ADA claims. That brings us to this appeal. We believe that the applicable standard before this court is whether the District Court abused its discretion. All right, so you have about a minute before counsel gets his time. And we believe that the court did not abuse its discretion in requiring the plaintiff to comply with the scheduling order and we believe that the court did not abuse its discretion in declining supplemental jurisdiction over the state law claims. Thank you, Your Honor. Thank you. Good morning. Good morning, Your Honors. May it please the court, Spencer Skeen for Appellee, Cypress Creek. The court astutely directed us to Chapman in a jurisdictional issue. And I'd like to address that in a second. First, I'd like to discuss with the court the scary thing about plaintiff's argument. It's essentially hidden in page 19 of the appellant's reply brief. And here's the statement that summarizes the appellant's position. Even though the District Court had discretion to reject the amended complaint, the District Court had no discretion to reject barriers identified in his timely expert report. That's what we're here to discuss, is whether or not the District Court can modify its docket or can monitor its docket by a scheduling order, can set deadlines, and then enforce those deadlines. We've talked a little bit about Chapman today. Chapman spoke to standing. Chapman did not modify this court's decision in Wong v. Regents of the University of California, which is 410F3-1052, which states that strict compliance with scheduling orders are required so that the court can monitor its docket and give the litigants essentially a fair opportunity to litigate the proceedings without gamesmanship. So is the complaint sufficient to give us jurisdiction under Chapman? Absolutely not. It doesn't come close. The Chapman court very specifically held. So why didn't anyone ever want to tell us that? Why did we have to figure that out? The Chapman came out January 7, Your Honors. Have you heard of 28J? Yes, Your Honors. Okay. I appreciate the court referencing Chapman, and the issue raised in Chapman in the en banc panel simply said that the court can look at the pleadings at any point in the appellate process, that the ADA Title III plaintiff must allege specific barriers and describe how they affected the plaintiff's disability and denied him full and equal enjoyment. Does this complaint meet the standard? No. It's essentially a wholesale audit with about 11 purported barriers, and then it goes to the conclusion the plaintiff was denied full and equal enjoyment. Counsel had indicated that the complaint is more detailed than Chapman. It's not. Actually, the complaint in Chapman was more detailed. It said we identified barriers and then attached an expert report. The expert report actually references California Building Code sections and actual ADAG sections that were allegedly violated. Excuse me. What specifically needed to be in the complaint that isn't? The plaintiff needed to allege specific allegations that indicated that he encountered a barrier that precluded him from full and equal access based on his disability. So he says that specifically. He does say that. He just doesn't identify what that barrier was. He says he visited the store, he encountered barriers, and they interfered with his ability to enjoy the services offered at the facility. Conclusion, conclusion, conclusion, no facts and no nexus. Essentially, he's got a wholesale audit, here are some violations, and then the conclusion is I was denied access. It doesn't say how. Now, what about the fact that we know he was in a wheelchair, and because he says that in the complaint, he requires the use of a motorized wheelchair, and then he does list barriers that are relevant to wheelchair. There aren't rail on the elevator. So all of the barriers that are listed in the complaint are relevant to blocking wheelchair or impeding wheelchair access. Does that differentiate it from Chapman? I don't believe so, Your Honor, because the same allegations are referenced in the accessibility survey that was attached to the complaint in Chapman. In this case, we have signage violations as well, and in particular my clients dealing with the parking lot and primarily the signage violations or alleged signage violations, and there's no indication as to how those impeded his ability to go to the store. As a matter of fact, appellant admits in the opening brief that Mr. Oliver went to the facility ten times, and as the court looked in through the underlying record, although no evidence was offered by appellant, the underlying record suggests that he was dropped off every time out front, that he never accessed the parking lot, that he visited on ten separate occasions, he got there either by trolley or essentially by chauffeur, and that he never parked and never once walked across the parking facility. So under Chapman, if I were to draft a complaint, I would have alleged that I am in a wheelchair, I used the parking facility on such and such a date, I wasn't able to park there because, for whatever reason, and I had to be dropped off at a different location. Show us some facts that suggest you were denied full and equal access. Don't simply state, here are a bunch of sign violations that I may or may not have encountered. We simply don't know from the complaint. The important thing to point out here, Your Honors, is if the court deems the complaint insufficient, which I believe it is, the time to amend it passed. Nobody has appealed the denial of the motion for leave to amend. As a matter of fact, it was essentially a motion for leave to modify the scheduling order so that a motion to amend could be filed. That ruling was not appealed. And the reason is there was no good cause. Plaintiff's counsel missed the deadline, admitted he missed the deadline. The court found that he unreasonably delayed and had no good cause for bringing a motion to amend at that late juncture. That issue is resolved. So if the complaint is invalid and doesn't state Article III standing, too late to amend it now. We've missed that. There's no case law that's been cited by appellants that would suggest that even though we've set deadlines and even though we've missed deadlines, it's unreasonably so that we can simply blow right through them by attaching an expert report to an opposition to a summary judgment motion. That's the rule that's being suggested today. Again, I point the court to the reply brief, which is a scary practice that's being suggested. Even though the district court had discretion to reject the amended complaint, the district court had no discretion to reject barriers identified in the timely expert report. I don't think there's any decision that's been referenced by the appellants that would suggest scheduling orders don't mean anything. With respect to the complaint, Your Honors, there's absolutely no evidence that would suggest that my client, Cypress Creek, violated the ADA. The only record that we have is the complaint and an expert report. The record that we've supplied in the supplemental excerpts suggests that three of the four issues were either withdrawn or mooted by repairs. The only arguable issue that might be left to be considered would have been the tow-away signage, but he doesn't suggest in his complaint how the tow-away signage is incorrect. It simply says tow-away signage is incorrect. Well, the supplemental experts of record that we provided show the tow-away signage was there. So it's there. What's wrong with it? There's no citation, as there was in Chapman, to a potential ADAG violation. Chapman, there's literally a flowchart that says the ISA should have been mounted on the right side of the double-leaf doors. Here's the section. In this complaint, we have tow-away signage incorrect. Well, we know we have it. What's wrong with it? Are we going with the building code? Are you going with the MUTCD? Are you going with the ADAG? We're entitled to know what legal standard you're saying we violated. It's just not there. So with the four corners of the complaint, which is the only operative complaint that's at issue, summary judgment in favor of Cypress Creek was appropriately granted. It should not be reversed. And that's one basis to essentially deny the appeal. The other is to simply... All right, you need to wrap up. You're over time. Thank you. Thank you, Your Honor. The other is to simply say the complaint never met standards. Thank you, Your Honor. All right, thank you for your argument. You've essentially used your time, but if you want one minute for rebuttal, I'll give you that if you stick to it strictly. Fair enough, Your Honor. I would simply point out that we did not just attach an expert report to our MSJ or our MSJ op. We included two declarations from Oliver detailing how the barriers related to his disability. Those can be found at the docket at 66-1 and 68-3. Those would be the basis for any proposed admitted complaint, showing that it wouldn't be futile if you were to remand it down and give us an opportunity to amend. So that said, unless the panel has any questions for me, I thank you. We have no additional questions. Thank you both for your argument. This matter will stand submitted. Next on calendar, William Treanor v. Lexington Insurance Company 09-56535, 09-56596. That matter has been previously submitted on the briefs and will stand submitted as of this date. Our last matter on calendar today is Rob Brantley et al. v. NBC Universal, case number 09-56785.
judges: Rymer, Callahan, Ikuta